Scott D. WALKER, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SC 85877.

Supreme Court of Missouri,
En Banc.

July 1, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

Branson L. Wood, III, Hannibal, MO, for Respondent.

PER CURIAM.[1]

Scott D. Walker was arrested for driving while intoxicated. A breath test indicated a blood alcohol concentration (BAC) of .113 percent. Acting pursuant to section 302.505, RSMo Supp.2001,[2] the director suspended Walker's license because his BAC exceeded .08 percent. Walker sued to obtain judicial review of the director's decision. After a hearing, the circuit court reinstated Walker's driving privileges. The director appeals, correctly contending that there is insufficient evidence to support the trial court's decision. The judgment is reversed.

1. This Court transferred this case after opinion by the Court of Appeals, Eastern District, authored by the Honorable Mary R. Russell. *Mo. Const. article V, section 10.* Parts of that opinion are incorporated without attribution.

2. Except as otherwise indicated, all statutory references are to RSMo 2000.

Section 302.505.1, RSMo Supp.2001, provides:

The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight. . . .

## Standard of Review

 This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court defers to the trial court's determination of credibility. *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003).

## Claims of Error

The director argues that the trial court erred in setting aside the suspension of Walker's license because: (1) the arresting officer had probable cause to arrest Walker for driving while intoxicated; (2) Walker's breath test result was .113 percent; and (3) Walker failed to rebut the director's *prima facie* case by proving by a preponderance of the evidence that either there was not probable cause for arrest or that his BAC was below .08 percent.

## Analysis

 This Court recently reviewed the statutory scheme for suspended or revoked driver's license cases involving those arrested upon probable cause to believe they were driving while intoxicated.

> Applying this statutory scheme, the director must initially present evidence to establish probable cause for the arrest and the driver's blood alcohol level of [.08] % or greater. This evidence creates a presumption that the driver was intoxicated. The driver is then entitled to rebut the director's *prima facie* case with evidence that his blood alcohol content did not exceed the legal limit. Ultimately, the circuit court must determine whether the director has met the burden of proving by a preponderance of the

evidence that the driver drove while legally intoxicated.

*Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003) (citations omitted.)

 The director established probable cause for Walker's arrest. Probable cause exists when the facts and circumstances warrant a person of reasonable caution to believe that an offense has been or is being committed, based on the circumstances as they appear to a prudent, cautious and trained police officer. *Kleffner v. Director of Revenue*, 956 S.W.2d 446, 448 (Mo.App. 1997); *Johnson v. Director of Revenue, State of Mo.*, 920 S.W.2d 129, 132 (Mo.App. 1996). Additionally, probable cause that supports the suspension of a driver's license can be developed after the driver has been otherwise properly stopped. *Johnson* at 132.

In this case, the officer testified that she stopped Walker's vehicle after seeing him swerving, crossing the centerline, and driving on the fog line. She then noticed that Walker's movements were slow, that he smelled of alcohol, and that his eyes were watery, bloodshot, and glassy. Walker admitted to the officer that he had consumed two beers before leaving a bar about five miles from where he was stopped. He also failed the field sobriety test. This evidence was sufficient to establish the necessary probable cause. Walker did not produce evidence sufficient to rebut the prima facie showing that there was such probable cause.

 The director also proved that Walker's BAC was at least .08 percent at the time of his arrest. The director presented evidence that properly established the foundation for admitting breathalyzer test results and that Walker's breath-test measured his BAC as .113 percent.

The foregoing established the director's *prima facie* case. Walker sought to rebut it by four theories: (1) failure to change the mouthpiece, (2) removal of his dentures, (3) his asthmatic condition, and (4) his BAC was lower when he was actually driving.

As to the mouthpiece issue, Walker offered evidence through an expert that blowing into a breath analyzer multiple times without changing the mouthpiece could have caused an elevated BAC reading. The expert also contended that the waiting period between tests should have been greater to maximize the accuracy of the test results. This expert, however, did no testing in general or on Walker to show the amount of impact repeated blowing or use of the same mouthpiece may have had on Walker's BAC reading.

The director offered contrary evidence. The director's expert testified testing results for the machine in this case indicated that using the same mouthpiece caused BAC to register .003 percent less than its actual amount.

■ Walker's inconclusive testimony is not sufficient to rebut the presumption of intoxication established by the director's *prima facie* case. *Verdoorn* at 547. Additionally, the state department of health has no rules, regulations or guidelines established pursuant to section 577.020.3 that require an officer to change the mouthpiece between tests. *Meyer v. Director of Revenue*, 34 S.W.3d 230, 234–35 (Mo.App. 2000).

As to his theory concerning the dentures, Walker's expert testified that removing Walker's dentures on his third test could have exposed alcohol in his denture adhesive that may have affected his BAC reading. The expert knew of no studies that supported this theory and offered no definitive opinion as to the amount of impact that removal of dentures could have had.

The director's witness testified that the testing machine is designed to detect the presence of mouth alcohol and to indicate that an invalid breath sample has been obtained if mouth alcohol is present. This witness also testified that he had conducted testing on denture adhesive as it related to BAC and found that after 15 minutes no residual alcohol remained in the denture adhesive. Walker was stopped at 12:21 a.m. and did not take the third breath test until 1:08 a.m. Therefore, no substantial evidence was presented to support a conclusion that any residual alcohol remained in Walker's denture adhesive that could have impacted his BAC reading.

■ Walker also argues that removal of his dentures was prohibited because breath tests cannot be properly conducted if there is "oral intake" before testing. Prohibited oral intake is that which can taint the test results or cause the BAC testing machine to malfunction. *Green v. Director of Revenue*, 961 S.W.2d 936, 939 (Mo.App.1998). In *Green*, the court held that the presence of dentures did not constitute oral intake such that they should be removed before testing. *Id.* Similarly, removal of Walker's dentures did not constitute prohibited oral intake that would invalidate the results of his BAC test. Walker's dentures were removed to increase the reliability of Walker's breath test by increasing Walker's breath flow, which was weakened by asthma.

■ Next, Walker asserts that his asthmatic condition might have caused a false breath test result. His expert witness conducted pulmonary function and absorption tests on Walker four months after Walker's arrest. He concluded that Walker's breath test on the night of his arrest overstated the amount of alcohol in his blood by 30.7%. The expert, however,

tested Walker with a hand-held Intoximeter breath analyzer machine, not the machine used to conduct the test upon which the director relied. The director presented evidence that the hand-held Intoximeter is not approved for use as an evidentiary unit in Missouri. Further, the expert's calculations were based on measurements of blood taken from Walker's veins during testing. The actual machine used, however, measures arterial blood alcohol, which feeds the lungs, brain, and central nervous system, and only then becomes venous blood.

Even if the trial court accepted the expert's calculations, Walker's BAC would have been above the legal limit of .08 percent. Thus, the testimony relating to Walker's asthmatic condition was not sufficient evidence to rebut the director's *prima facie* case.

Last, Walker attempts to rebut the director's *prima facie* case by arguing that his BAC was less than .08 percent while he was driving. The director is only required to show a driver's BAC at the time of the test if it can be reasonably assumed from the other evidence that his BAC at the time of driving was above the legal limit. *Meyer v. Director of Revenue,* 34 S.W.3d 230, 235 (Mo.App.2000), *overruled on other grounds by Verdoorn v. Director of Revenue,* 119 S.W.3d 543, 546–47 (Mo. banc 2003). Walker admitted that he consumed between 24 and 32 ounces of beer at a bar about five miles from where he was stopped. He had his first beer about 20 minutes before he was stopped, and he was drinking until he left the bar, which he testified was no more than 5 minutes before he was stopped. As noted previously, 47 minutes elapsed from the time Walker was stopped to the time of the test. No substantial evidence supports a conclusion that Walker's BAC was less than .08 at the time he was driving.

The judgment is reversed.

All concur.