**Tammy Jean CALLENDAR,
Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 58353.**

Missouri Court of Appeals,
Western District.

March 6, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2001.

Application for Transfer Denied
June 26, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellants.

David E. Pettyjohn, Kansas City, for respondent.

Before SMART, Presiding Judge, ELLIS and LAURA DENVIR STITH, Judges.

ELLIS, Judge.

The Director of Revenue for the State of Missouri appeals from a judgment entered in the Circuit Court of Platte County, Missouri, setting aside the suspension of Respondent Tammy Jean Callender's driver's license.

On October 2, 1999, at approximately 11:30 a.m., Officer Donald Dawson of the Riverside Police Department was traveling westbound on Vivion Road when he saw Respondent's car strike the rear of another vehicle in the eastbound lane. After Officer Dawson turned on his police lights and began to make a U-turn, Respondent drove rapidly away from the scene of the accident. Officer Dawson followed Respondent from Riverside into Northmoor where Respondent's vehicle veered into the oncoming traffic lane, struck another car head-on, and bounced into a minivan.

When Officer Dawson reached Respondent's vehicle, he found Respondent unconscious behind the steering wheel and another individual unconscious in the passenger seat. Empty bottles of beer were in both the front and back seats of the vehicle. Some full bottles of beer and an unopened bottle of bourbon were also in the car.

Subsequently, Respondent regained consciousness but was groggy and lethargic. Officer Dawson detected a strong odor of alcohol on her breath from two to three feet away. Officer Dawson noted that Respondent had sustained major injuries to her face and head. He also observed that Respondent's eyes were dilated and glazed-over. Due to her physical condition, Officer Dawson did not administer any field sobriety tests.

Respondent behaved belligerently and became combative with the medical personnel attempting to put her in an ambulance. Because of her combative nature, the medical personnel applied restraints to hold her on the gurney in the ambulance.

The ambulance crew took Respondent to Truman Hospital, and Officer Dawson followed them there. At the hospital, at 12:42 p.m., Officer Dawson read Respondent the implied consent warning and requested that she submit to a blood-alcohol test. Respondent stated that she would not take such a test. After Respondent refused to take the test or answer his questions, Officer Dawson left the hospital. Officer Dawson did not attempt to handcuff Respondent or otherwise restrict her freedom in any way while at the hospital,

and as far as he was concerned, she was free to leave the hospital.[1]

Based on her refusal to submit to the blood-alcohol test, on October 5, 1999, the Director of Revenue revoked Respondent's driving privileges. On October 20, 1999, Respondent filed a Petition to Review Revocation of License in the Circuit Court of Platte County.

The Circuit Court conducted a hearing on Respondent's motion on February 3, 2000. Following the hearing, the Circuit Court entered its judgment sustaining Respondent's motion and reinstating her driving privileges. The Court based its decision entirely on a finding that Respondent had not been placed under arrest as required by § 577.041.[2]

■ On appeal, the Director claims that the uncontroverted evidence established that Respondent had been placed under arrest. The Director contends that Respondent should be deemed to have been arrested at the point Officer Dawson stated that she was under arrest for driving while intoxicated during the course of reading the implied consent warning to her. The Director further argues that the uncontroverted evidence satisfied all of the elements necessary to support a revocation under § 577.041 and that the Circuit Court erred in setting aside the revocation of Respondent's license.

■ When reviewing the Circuit Court's judgment in a driver's license revocation case, we will affirm the judgment of the Circuit Court unless it is not supported by substantial evidence, the decision is against the weight of the evidence, or the Circuit Court erroneously declares or applies the law. *Reynolds v. Director of Revenue*, 20 S.W.3d 571, 574 (Mo.App. W.D.2000). In reviewing the judgment, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Id.*

■ "In order to revoke a license pursuant to § 577.041, the Director must show that: 1) the person was arrested; 2) the arresting officer had reasonable grounds to believe the person was driving a motor vehicle while in an intoxicated condition; and 3) the person refused to submit to a test." *Rosa v. Director of Revenue*, 948 S.W.2d 727, 728 (Mo.App. W.D.1997). The Director of Revenue must establish all of these elements by a preponderance of the evidence. *Rinne v. Director of Revenue*, 13 S.W.3d 658, 659 (Mo.App. W.D.2000). "If the trial court determines one or more of these criteria have not been met, it must reinstate driving privileges." *Rosa*, 948 S.W.2d at 728.

■ In the case at bar, the Circuit Court found that the Director failed to establish that Respondent was under arrest at the time she refused to submit to the blood-alcohol test. Under § 544.180, "[a]n arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise." § 544.180, RSMo 1994; *State v. Pfleiderer*, 8 S.W.3d 249, 255 (Mo.App. W.D.1999). Under this statutory language, contrary to the Director's assertion, an arrest is not effectuated merely by an officer telling a suspect that he or she is under arrest one or more times. *State v.*

---

1. In filling out his incident report, Officer Dawson marked "n/a," meaning "not applicable," where the incident report form asked for the time of arrest because he did not consider Respondent to have been placed under arrest.

2. All statutory references are to RSMo Cum. Supp.1999 unless otherwise noted.

*Nicholson,* 839 S.W.2d 593, 596–97 (Mo. App. W.D.1992). "Arrest is not effected, absent physical restraint, if the suspect does not yield to the officer's 'show of authority.' " *Id.* at 597 (citing *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 1551–52, 113 L.Ed.2d 690 (1991)). Accordingly, in order for the Director to establish that an arrest had occurred, the Director was required to submit substantial evidence establishing either that Officer Dawson physically restrained Respondent or that she submitted to his custody. *Id.*

The Director did not present sufficient evidence at the hearing to support a finding that Officer Dawson physically restrained Respondent or that Respondent submitted to any show of authority by him. While Officer Dawson testified that he told Respondent that she was under arrest as a part of reading the implied consent warning to her, he specifically testified that he did not place Respondent in handcuffs or otherwise restrict her liberty in any way. He further stated that he did not believe he had placed her under arrest at the hospital. He said that he marked "n/a,"

meaning "not applicable," where the incident report form asked for the time of arrest because he had not placed Respondent under arrest. He stated that he left the hospital after Respondent refused to take the blood-alcohol test or to answer his questions and that she was free to leave the hospital. He also testified that he did not even issue a ticket to her at the hospital. Under these facts, we cannot say that the trial court erred in finding that Respondent was not under arrest at the time she refused to take the blood-alcohol test. *See, Nicholson,* 839 S.W.2d at 596–97.[3]

The Director also attempts to claim that the actions of the paramedics in restraining Respondent in the ambulance should satisfy the physical restraint requirement. However, the record does not indicate whether Respondent continued to be restrained after arriving at the hospital. Moreover, the record does not reflect that Officer Dawson participated in this restraint or that the reason for the restraining Respondent in the ambulance had anything to do with an assertion of authority to arrest. As noted, *supra,* under the

---

**3.** In *State v. Nicholson,* 839 S.W.2d 593, 596–97 (Mo.App. W.D.1992), this Court offered the following analysis in determining that no arrest of Mr. Nicholson had been effected:

No substantial evidence proving either Mr. Nicholson's actual restraint by Officer Dodd or that he had submitted to her 'show of authority' was presented at trial. Mr. Nicholson arrived at the police department ... while Officer Dodd was out on patrol. Upon arriving at the police station, Officer Dodd noticed Mr. Nicholson sitting in the station's public lobby. Officer Dodd asked Mr. Nicholson to accompany her to the private, secure area of the police station, but Mr. Nicholson refused. After several more unsuccessful attempts to lure Mr. Nicholson into the secured area, Officer Dodd approached Mr. Nicholson, showed him certain lab results, and told him that he was under arrest for a felony. Officer Dodd did not in any way limit Mr. Nicholson's freedom or attempt to control him. She did not attempt to hand-cuff Mr.

Nicholson, place her hand on him or draw a weapon to restrain Mr. Nicholson's mobility. Mr. Nicholson denied Officer Dodd's accusations, and the officer again informed Mr. Nicholson that he was under arrest. As Mr. Nicholson stood up, Officer Dodd again told him he was under arrest for a felony and that he needed to accompany her to the security area. Mr. Nicholson said he could not do that and he then ran out the front door of the police station. As Mr. Nicholson departed, Officer Dodd attempted to get close enough to Mr. Nicholson to restrain him, but she could not.

The facts do not support the conclusion that Mr. Nicholson had been arrested.

\* \* \*

Mr. Nicholson's physical custody was not restrained, and his refusal to heed Officer Dodd's assertion of authority was not submission to the officer's authority. Mr. Nicholson was not arrested.

applicable statutory language, an arrest occurs when an individual is restrained by an officer or submits to the custody of an officer acting under authority of a warrant or otherwise. § 544.180, RSMo 1994. The paramedics were not acting under such authority and the record does not reflect any intent by the paramedics or Officer Dawson to effect an arrest of Respondent in that manner.

The Circuit Court did not err in finding that the Director failed to prove by a preponderance of the evidence that Respondent had been arrested at the time she refused the blood-alcohol test. The Circuit Court's finding is supported by substantial evidence and is not against the weight of the evidence.

The judgment is affirmed.

All concur.