Ronda L. SPRY, Petitioner–Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.**

**No. 26020.**

Missouri Court of Appeals, Southern District, Division Two.

Sept. 28, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jamie J. Lee, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

John M. Garrity, Joplin, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

The Director of Revenue ("Director") appeals from a judgment of the circuit court setting aside the one-year driver's license revocation, pursuant to § 577.041, of Ronda Spry ("Spry") for refusing to submit to a breathalyzer test after she was arrested for driving while intoxicated.[1] The Director contends the trial court erred in granting Spry's motion for a "directed verdict" at the close of the Director's evidence because she made a *prima facie* case for revocation, which Spry failed to rebut. We reverse and remand the case for further proceedings.

### I. Statement of Facts and Procedural History

At approximately 11:00 p.m. on May 2, 2003, Officer Ronnie Houdyshell ("Officer Houdyshell") of the Carterville Police Department received a dispatch directing him to proceed to the corner of Main and Hatcher in Carterville. Residents at that location had called the police department and reported seeing an intoxicated person pull up in a vehicle and then slump over.

Officer Houdyshell drove to the corner of Main and Hatcher and found Spry sitting in the passenger's seat of the vehicle. She appeared to be asleep. After backup arrived, Officer Houdyshell tried to awaken her and finally succeeded in doing so. When Spry opened the passenger's side door, Officer Houdyshell observed a half-empty bottle of vodka and a beer bottle inside the vehicle. Spry appeared to be extremely intoxicated. Officer Houdyshell did not personally observe Spry operating the vehicle, and he could not tell if the engine was warm. He did not find any

1. All references to statutes are to RSMo (2000).

other property in the car, however, suggesting there had been another driver. When Officer Houdyshell asked Spry how she had gotten there, she simply replied, "Me."

Because Spry's car was right off the highway, she was transported to the Carterville Police Department so field sobriety tests could be safely performed. Spry admitted that she had been drinking earlier in the evening, but she did not say how much she had to drink. After these tests were concluded, Officer Houdyshell had reason to believe Spry was very intoxicated. She was arrested for driving while intoxicated and asked to take a breathalyzer test using a DataMaster machine. Spry was told that, if she refused to take the test, her driver's license could be revoked for one year and evidence of her refusal could be used to prosecute her.

Spry agreed to take the test and attempted to do so, but she only blew into the DataMaster for five to ten seconds and then stopped. Officer Houdyshell advised Spry that he did not get an adequate breath sample. She attempted to take the test again, but she "just quit blowing" and failed to give an adequate breath sample. Officer Houdyshell explained to Spry a second time that her license could be revoked if she did not provide an adequate sample. She understood what she was told, but she did not try to give a sample any more. According to Officer Houdyshell, "[s]he just quit."

Pursuant to § 577.041.3, the Director revoked Spry's driver's license for one year. She filed a petition for review of this administrative determination and requested a trial *de novo* in circuit court, as permitted by § 302.311. At the hearing, the Director called Officer Houdyshell as its only witness, and he gave the testimony summarized above. The officer was not cross-examined by Spry's counsel. Instead, he orally moved for a directed verdict, which the trial court sustained.[2] The trial court entered a judgment for Spry which stated that the "Court finds in favor of Petitioner [Spry] and finds no probable cause to believe Defendant was driving while intoxicated." The Director filed a timely notice of appeal from the judgment.

## II. Standard of Review

The trial court appears to have entered judgment in Spry's favor after her counsel moved for a directed verdict at the close of the Director's case. This rather unusual procedure requires us to ascertain the proper standard of review to be applied in this appeal.

In a jury-tried case, a motion for directed verdict challenges the sufficiency of the plaintiff's evidence to make a case. *Erdman v. Condaire, Inc.*, 97 S.W.3d 85, 88 (Mo.App.2002). When reviewing a trial court's decision to grant a directed verdict, an appellate court views the evidence and all permissible inferences derived therefrom in a light most favorable to the plaintiff. *Leo Journagan Const. Co., Inc. v. City Utilities of Springfield*, 116 S.W.3d 711, 724 (Mo.App.2003). "A directed verdict is a drastic action to be taken sparingly and only where reasonable persons in an honest and impartial exercise in their duty could not differ on a correct disposition of the case." *Oak Bluff Partners, Inc. v.*

---

**2.** The record on appeal is incomplete because the transcript inexplicably stopped in mid-sentence as Spry's counsel was making this motion. Neither party, however, claims the material omitted from the transcript is necessary to determine the issue presented. Therefore, we may decide this appeal on the merits because the omission prejudices neither party. *See Stamatiou v. El Greco Studios, Inc.*, 898 S.W.2d 571, 577 (Mo.App.1995); *E.A.U., Inc. v. R. Webbe Corp.*, 794 S.W.2d 679, 685 (Mo.App.1990).

*Meyer*, 3 S.W.3d 777, 783 (Mo. banc 1999). "If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper." *Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo. banc 1998).

We set out the foregoing rules in order to explain why they do not apply here. In a court-tried case like this one, there is no "verdict" to direct. *Roberts v. Wilson*, 97 S.W.3d 487, 491 (Mo.App.2002); *Kamil, Decker & Co., P.C. v. SMC Properties, Inc.*, 998 S.W.2d 818, 819 (Mo.App. 1999). As our colleagues in the Western District have explained:

> In a trial without a jury, the judge is not only the trier of the facts but also the determinant of whether the plaintiff has shown a right to relief. It is for this reason that the motion for directed verdict, so apt in a jury case to differentiate the judge function as to whether the evidence is submissible from the jury function to find the facts and return a verdict under the instructions of the court, has no role or function in a trial to the court without a jury.

*City of Hamilton v. Pub. Water Supply Dist. No. 2*, 849 S.W.2d 96, 100 (Mo.App. 1993). After the plaintiff in a court-tried case has completed the presentation of his or her evidence, Rule 73.01(b) authorizes a defendant to "move by motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief." Unlike a motion for directed verdict in a jury-tried case, a Rule 73.01(b) motion submits the case for judgment on the merits and requires the trial court to weigh the evidence and assess credibility. *See Berlin v. Pickett*, 100 S.W.3d 163, 168 n. 1 (Mo.App.2003). When a motion for

directed verdict is inappropriately made in a court-tried case, the motion is treated as one submitting the case for a decision on the merits pursuant to Rule 73.01(b). *See Roberts*, 97 S.W.3d at 491; *Coyle v. Director of Revenue*, 88 S.W.3d 887, 892 (Mo. App.2002); *Keefhaver v. Kimbrell*, 58 S.W.3d 54, 58 (Mo.App.2001). Therefore, rather than review for submissibility, we review the trial court's judgment reinstating Spry's driving privileges pursuant to the familiar standards established by Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[3] *See Roberts*, 97 S.W.3d at 491; *Coyle*, 88 S.W.3d at 892. We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

In determining whether the trial court's judgment is supported by the evidence or is against the weight of the evidence, we defer to the trial court's credibility determinations. *See Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). It is important to point out, however, that "[i]f the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Id.* Furthermore, in a license revocation case, a trial court "is not free to disregard unequivocal and uncontradicted evidence that supports Director's contentions." *McCarthy v. Director of Revenue*, 120 S.W.3d 760, 761 (Mo.App.2003); *Sweatt v. Director of Revenue*, 98 S.W.3d 926, 928 (Mo.App.2003). The standard of review does not allow an appellate court "to disregard uncontroverted evidence supporting the fact that all

---

**3.** All references to rules are to the Missouri Rules of Civil Procedure (2004). *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

elements of Director's case were met." *Zimmerman v. Director of Revenue,* 72 S.W.3d 634, 636 (Mo.App.2002).

### III. Discussion and Decision

■■■ Section 577.020.1 specifies six circumstances in which a person who operates a motor vehicle upon the public highways of this state is deemed to have consented to a chemical test of the person's breath, blood, saliva or urine to determine the alcohol or drug content of the person's blood. One such circumstance is when "the person is arrested ·for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition[.]" § 577.020.1(1). If the arrestee refuses to take the chemical test, the officer is required to make a sworn report of that fact to the Director. § 577.041.2(2). Upon receipt of the officer's report, the Director is required to revoke the individual's driving privileges for one year. § 577.041.3.

■■■ Upon request, a post-revocation hearing is available in circuit court. *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002); § 577.041.4. At the hearing, the trial court is limited to considering three issues: "(1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hinnah,* 77 S.W.3d at 620.

Reasonable grounds is virtually synonymous with probable cause. *Id.* The Director has the burden of proof at the hearing, and if the trial court determines any of the three issues against the Director, the ·trial court must order the Director to reinstate the driver's license. *Id.*

■■■ Here, only the second issue is in dispute. The trial court reinstated Spry's license because it determined that Officer Houdyshell had no probable cause to believe Spry was driving while intoxicated. As our Supreme Court noted in *Hinnah:*

> "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." *State v. Tokar,* 918 S.W.2d 753, 767 (Mo. ·banc 1996). Whether there is probable cause to arrest depends on the information in the officers' possession prior to the arrest. *State v. Wiley,* 522 S.W.2d 281, 287 (Mo. banc 1975). There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case. *State v. Pruitt,* 479 S.W.2d 785, 788 (Mo. banc 1972).

*Id.* at 621.

■■■ In order to establish the *prima facie* case necessary to uphold the revocation of Spry's license, the Director was not required to prove that Spry was actually intoxicated or was actually driving. *See Brown v. Director of Revenue,* 85 S.W.3d 1, 3 (Mo. banc 2002); *Hinnah,* 77 S.W.3d at 622.[4] Therefore, we confine our

4. In *Brown,* our Supreme Court noted that the *de novo* review process provided by § 302.311 "is civil rather than criminal and is not a trial of the issue of intoxication. The issue, rather, is whether a prudent, cautious and trained officer had reasonable grounds to believe the arrestee was driving while intoxicated." *Id.* at 3–4 (citations omitted). In *Hinnah,* the Supreme Court stated that, "[u]nder the plain words of the statute, the question is not whether the person arrested actually was driving but whether the officer

review solely to the question of whether "the officer who requested the test had reasonable grounds to believe that the licensee was driving while intoxicated." *Hinnah,* 77 S.W.3d at 622. We do so by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer. *Brown,* 85 S.W.3d at 3–4; *Cox v. Director of Revenue,* 37 S.W.3d 304, 307 (Mo.App.2000).

Before Officer Houdyshell arrested Spry, he had the following information in his possession. He was dispatched to the corner of Main and Hatcher based on a telephone report from residents there that an intoxicated person had pulled up to the intersection in a car and then slumped over.[5] When Officer Houdyshell arrived at that location, he found Spry in the passenger's seat of a car. The vehicle's keys were in the ignition, and no other driver was present. When he asked Spry how she got there, she said, "Me." Officer Houdyshell found a half-empty bottle of vodka and a beer bottle in the car. Spry admitted she had been drinking that evening, and she appeared to be extremely intoxicated. Officer Houdyshell still believed Spry was "very" intoxicated after she performed field sobriety tests at the police station. We conclude that the foregoing information would have given a prudent, cautious and trained police officer in Officer Houdyshell's position reasonable grounds to believe Spry was driving while intoxicated. *See Burleson v. Director of Revenue,* 92 S.W.3d 218, 222 (Mo.App. 2002); *Saladino v. Director of Revenue,* 88

S.W.3d 64, 70 (Mo.App.2002); *Cox v. Director of Revenue,* 37 S.W.3d 304, 308 (Mo. App.2000). Therefore, the trial court's contrary conclusion is not supported by the evidence.

The trial court erred in concluding that the Director did not make a *prima facie* case to support her revocation of Spry's driving privileges pursuant to § 577.041. This error necessitates that the case be remanded for further proceedings:

> [T]he Director made a *prima facie* case for revocation under § 577.041, causing the burden to shift to the respondent to present evidence in rebuttal of the same. No such evidence was ever presented in that, as was noted, *supra,* the trial court granted the respondent's motion for "directed verdict" at the close of the Director's case. Given the fact that the Director's *prima facie* case was not rebutted, the trial court clearly erred in setting aside the Director's revocation of the respondent's driver's license and ordering its reinstatement. Thus, we reverse the judgment of the trial court. And, inasmuch as the respondent did not have an opportunity to present any rebuttal evidence, we remand the case to the trial court to give the respondent that opportunity.

*Roberts v. Wilson,* 97 S.W.3d 487, 494 (Mo. App.2002) (citations omitted). This inevitable consequence of the trial court's error in sustaining a Rule 73.01(b) motion vividly illustrates why such a motion should rarely, if ever, be sustained in a trial *de novo*

---

who requested the test had reasonable grounds to believe that the licensee was driving while intoxicated." *Hinnah,* 77 S.W.3d at 622.

**5.** It is well-established that a police officer has the right to rely upon this type of information from citizen witnesses as one part of the factual matrix supporting a probable cause determination. *See Balakas v. Director of Reve-*

*nue,* 109 S.W.3d 197, 199 (Mo.App.2003); *Jarvis v. Director of Revenue,* 92 S.W.3d 301, 305 (Mo.App.2002); *Burleson v. Director of Revenue,* 92 S.W.3d 218, 221 (Mo.App.2002); *Rain v. Director of Revenue,* 46 S.W.3d 584, 588 (Mo.App.2001); *McCabe v. Director of Revenue,* 7 S.W.3d 12, 14 (Mo.App.1999); *State v. Cole,* 657 S.W.2d 59, 61 (Mo.App. 1983).

conducted pursuant to § 302.311. Because the trial court did so here, the cause is remanded to allow Spry the opportunity to present evidence, if any, to rebut the Director's *prima facie* case. "Because of the time that has elapsed while the appeal was pending, the trial court may conduct a new trial, rather than a continuance of the prior trial, if deemed beneficial by the trial court." *Baldridge v. Director of Revenue,* 82 S.W.3d 212, 215 (Mo.App.2002).

The judgment of the trial court setting aside the Director's revocation of Spry's license and ordering its reinstatement is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

SHRUM, J. and BARNEY, J., concur.